Good morning, Your Honor. May it please the Court, I'm David Larkin. I represent Michael Kavinis, the appellant plaintiff in this case. I'd like to reserve three minutes for rebuttal. The defendant in this appeal is Horizon Community Learning Center, Inc., a private, non-profit organization that has a charter with the state of Arizona to operate a public school.  The claims that are issued here are two Section 1983 claims for violation of Mr. Kavinis' constitutional rights. In connection with employment? Actually not. He was given due process in the termination of his employment. There was a hearing and so on. This is about conduct with respect to his, in the first claim, his liberty interest for statements that were made, false statements that were made to damage his reputation in the community and affect his ability to find employment subsequent to the termination of his employment. He made a notice, sent a notice in December six months after his termination to the school requesting a name-clearing hearing because of statements that had been made by the school to prospective employers and just in general. Our position here is that the appellee defendant Horizon is a public school and therefore everything that it does in operating and managing a public school and its dealings are state actions. So that's the problem I have. It doesn't seem to be that broad. You don't go from public school to everything. It seems that the cases tell us that you look at the specific context of the dispute and so I'm beginning to wonder are we limited to just looking at this as an employment decision? You know, however nicely you like to slice it. It isn't because the decision with regard to his employment was made through a hearing. It's about the conduct of the school as a public school. Our position is that... Did they make the statements about him in connection because of what happened with his employment? Well, it seems yes. That seems undeniable. This is an employment beef. It was statements that were made when he wanted to go for example to track meets and meet with students and parents. But the distinction the Court is looking at right here is a false distinction made in Rendell Baker. Rendell Baker was... Rendell Baker made a false distinction? Well, you're making... If you are... If the Court, as the district court did, is looking at Rendell Baker for guidance in making his decision, it's a false distinction because Rendell Baker was a private... The school was a private school. It did not serve the exclusive prerogative of the state of operating a public school. In fact, the Court in there said that until they acknowledged that Massachusetts, until 1972 when they passed this law providing for these schools for maladjusted students who could not be treated in the public school, this was not something that the state had done. So we have, you know, we have what is there started as a wholly private school in Rendell Baker. Yes. And then we have what would be a true public, an absolute public school that would operate within the state of Arizona public school system. And then we have your school that we're talking about. So it's a little hybrid in the sense that as you started it's a private non-profit but so... It's a chameleon. But if you look at the cases if the charter school tries to take advantage of its position as a public school, it will either find its political subdivision or not a political subdivision depending upon if it's trying to take advantage of its position as a charter school. Here they'd be taking advantage of their position as a public school, a private school an alleged private school or charter school by claiming that they don't have to treat these public school teachers who are the integral part of a public school providing public education to public students. To the extent that... Did the state have any role that... I understand you have a state sponsor that's a school board or school district. I'm not sure what it was in this case. Did they have any specific input or role in the personnel decisions of Horizon? The school are allowed to manage its employees without... In other words, they're excluded from the statutory requirements of how to treat a certified teacher. But that isn't saying that they're not a public school for purposes of constitutional rights. That's an issue for the court here. I mean, you can't... It's an artificial distinction to say that teachers, public school teachers who provide public instruction, the exclusive prerogative of the state was the court acknowledged... This court acknowledged in Moran versus... Wilson versus Moran Community School. They acknowledged that public education has been the traditional function of the states. These are schools that are publicly funded. The public goes. There's no tuition. And it is for the public. The school in Rendell Baker was private. There seem to be two things, I think. One, you wanted... He wanted a name clearing hearing, but then he also felt there was... The school was impinging his constitutional rights to be able to go out and talk to parents or go to events. Attend the state track meet with students that he coached privately. So there's actually two aspects to the relief that... Two claims. There's two constitutional claims. One is liberty and just trying to get... And it seems to me that... Do you think under the construct of the Supreme Court that whether or not the school as a state actor could be treated differently depending on the claim? As far as I can see, as long as it's providing public education, anything that has to do with that process would be state action. And then it would be subject to certain immunities and so on, depending upon the context. To the extent that they have inner dealings with regard to just the management of the private corporation, which in the last case we cited, Jordan versus Cain Educational Corp. Northern Cain Educational Corp. They actually went a further distinction from the charter school to the corporation itself. Most of the cases are just saying, okay, it's a charter school, it's a school. But in the last case I cited, Jordan versus Northern Cain, they actually went the further distinction between the school, which is just the functioning operations of managing the students and the teachers and the parents, to the actual entity itself and said even then it's a state actor based on the public education process. We have these cases, I think Gorenk is the one that comes to mind, where even though it was a public entity, the court, we said, but it's a private actor for purposes of dealing with its employees. How does that fit into your framework? The professional public school teacher is not merely an employee. It's an integral part of providing public education. If you look at the regulations for the public school teachers, they're licensed, they have to meet certain requirements, and they're not fungible. You can't just go out and say we're hiring anyone to be a public school teacher. It's not fungible, whereas if you're just a public school, that may be the case. But this is a separate type of institution. It's a public school. It's public school by statute. Even the statute symbolically with regard to the flag, the Constitution, the Bill of Rights sets aside public schools that are owned by the state and charter schools have to provide the flag, the Constitution, the Bill of Rights, and private schools are exempt. And that's a distinction that I think that it is bad policy for a state to have public schools and not to provide the same constitutional rights to the students and the teachers that they would have in a public school. It's a public institution by statute. Do you want to save the rest of your time for rebuttal? I do have one question. On June 1st, we got a 28-J letter referencing a case decided apparently eight years ago, Salt River-Pima Maricopa Indian Community School that seems to say state sponsorship and oversight cannot transform charter schools into the state for the purpose of the pastor amendment. Do you have anything to say about this Salt River case? That was a case where there was a specific statute that provided that it defined the state as the state and an organization that could designate a tribal school as a charter school. And the court said that it's not the state under the definition of this statute. The tribal schools are trying to double dip by obtaining special funds for non-tribal school stimulus funds. And they decided the case basically on the fact that it didn't meet the statutory definition of the state. And then as a dicta, I would say, they said plus it's not a public institution. But that's the issue. I don't think this court can defer to the expertise of the Arizona Court of Appeals on a constitutional issue like this, especially when that case was not decided on the statutory definition of the state, which included the ability to designate a tribal school as a charter school. There was money that came to the tribal schools and they have a policy so that you can't obtain twice, be paid twice by taxpayers. Is whether or not we're dealing with a state law issue here as to what this school is? Isn't that a state law issue? It fulfills a public function for the purpose of the constitutional test. And what we're arguing is that it is a public school that is the exclusive prerogative of the states as this court recognized in Wilson v. Verona. And therefore it is a public school. And when it operates as a public school with its teachers... We have your point in mind. Thank you. We'll hear from the school. Good morning, Your Honors. And may it please the Court, my name is Larry Wolkin and I represent the appellees. Personal autonomy is a defining characteristic of Arizona charter schools. ARS Title 15, Section 183E5 exempts charter schools from certain requirements that are applicable to its district counterparts. For instance, charter schools don't have to hire certified teachers as district schools do. Charter schools don't have to afford tenure to its teachers as district schools do. And perhaps most importantly to the disposition of this case, charter schools don't have to provide certain and defined due process which is found under Title 15, Section 539 and 540, which is afforded to district school teachers when their termination is eminent. In fact, Section 183F specifically states that charter schools define their own personnel policies and those personnel policies have to be included in the application for approval of the charter school. So, can I just interrupt on that? So the personnel policies are part of the charter and then the charter is reviewed by the state entity sponsor. How much input does the state entity sponsor have in changing the charter or input in the charter? There's also provisions allowing them to have oversight of the schools. Can you explain that a bit? Yes, Your Honor. Judge Arcuda, this charter school is sponsored by the State Board of Charter Schools. And I can tell you that the State Board of Charter Schools has little to no involvement other than rubber stamping either the approval of the charter school or denying the application because of some defect. But what the State Board of Charter Schools, excuse me, the State Board of Charter Schools does not do is they don't go and they don't go tinker with the personnel policies and say, well, it has to be changed in this way or in that way. And certainly that did not happen with respect to Horizon's personnel policy. What about the separate claim apart from the employment claim, and that is the Constitutional Freedom of Association claim? That doesn't fall within the rubric that you just talked about where they try to carve out personnel policies, correct? That is correct, Judge McKeown. But there's nothing about that claim which is tied to any type of regulation from the State of Arizona. So to the extent that the charter school is not acting as a State actor when it prohibits Mr. Cavaniss from going to a track meet, we don't believe that the analysis translates somehow into that there's a State actor. I mean, for instance You don't think, for example, a student who had a First Amendment claim would be able to bring that claim because you would say it's not a State actor? Actually, I'm not sure I would agree with that. I think that the group of cases which deal with the application of Section 1983 to charter schools, they fall into two broad categories. One are claims by students and parents of students for constitutional infractions to the student. And in those cases, the district courts have held that charter schools are subject to Section 1983. But importantly, almost universally in all of those cases, there's a discussion of Randall Baker, and there's a distinction between the facts where the infraction is of the constitutional right of a student and where it is of an employment decision made of a teacher. And the reason that is, is this. Because most State constitutions guarantee students a right to a free and public education. And in certain of the situations, the charter schools were acting as prisons or juvenile correction facilities. Okay, so let's move away from the students and say that the teacher had, as we've had some cases where teachers put up certain posters in their school and the school district says, you know, take that down. You can't put that kind of poster up in my school. Is that an employment issue or is that a constitutional right of the teacher or where does that fall? It's a much closer call. It's somewhere in between. But for our purposes, we would suggest that if there is nothing about the State regulation or State Board of Charter Schools that tells that teacher that he or she can't express her constitutional rights and then the private corporation makes the decision to enforce a policy that restricts those constitutional rights, that that is not State action subject to redress under Section 1983. It's much like the Supreme Court discussed the standard in the Brentwood case where it said that the key is to figure out whether the actual complained of act is fairly attributable to the State. And we look at certain tests to determine if it is. For instance, we look to see if the State was intricately intertwined in the decision to take the act which was complained of. Or if, for instance, the school was coerced by the State, for instance, will withhold all of your funding unless you do something Can I tell you where I'm having some trouble and I don't know what the answer is? Please. That is that if you take Rendell Baker or Brentwood, most of these cases or public utility cases, you actually have a fully private entity. Then the court's trying to figure out, but is it kind of dabbling in the public arena? What do you think is the best case or kind of case that we would look at where you have something here where the State designates this as part of the public schools and the Attorney General reinforces that through its opinion? Do we have cases that really address this kind of situation? I would suggest that you actually do have guidance in the Rendell Baker case and you'll notice that in footnote one of the Rendell Baker case, the Supreme Court explains that the makeup of the relationship between the new prospective school in Rendell Baker and the State of Massachusetts, the genesis of that relationship is from a Massachusetts statute which provides that school districts can contract with private corporations to provide for educational services. And we suggest that that's the exact same type of process with the Arizona Association of Charter Schools and that is consistent with the Arizona Supreme Court's decision in the Salt River Pima case where it held that, and this is the two sentences, while Arizona statute defines districts as political subdivisions of the State, it contains no such definition for charter schools, and here's the important sentence, rather the statute provides that charter schools are public schools established pursuant to a contract with the appropriate sponsor. So another analogy that I could perhaps provide to the Court which may be of some assistance is the building of highways and that is something that's brought up throughout some of the cases that discuss private schools and their relation to section 1983. We would think of the building of highways as an enterprise which is traditionally public in nature and the state would contract with a general contractor to build the highways. But if that general contractor decided to terminate or somehow otherwise affect the rights of one of the construction workers, that certainly wouldn't give rise to a section 1983 claim. We suggest in our case that the school is much like the general contractor is in the highway analogy and when the school acts just as the general contractor does when building a road to terminate one of his or her construction workers. But you don't have a statute that says a private contractor who builds a highway for the State is a public part of the State Department of Transportation. So you don't have a statutory analogy for third-party contractors in those cases, do you? You're exactly right, Judge McEwen. But you mentioned in posing the initial question that this was something that was raised by the Arizona Attorney General in his opinion. And we suggest that there is actually some guidance within that opinion that supports our position contrary to the appellant's view. And I'm specifically referring to a block quote that you'll find on page 13 of the appellant's brief. And in the very last sentence of the first full paragraph, the Attorney General writes, the charter of a school must also be established by a governing body that is responsible for the policy and operational decisions of the school. And we suggest there that what the Arizona Attorney General is doing is it's distinguishing personnel decisions and decisions made by the governing board of the school from those which are more state-related, such as the issue which was before the Attorney General when deciding whether the public records request law would apply to charter schools. So in our instance, we have a private corporation that makes a personnel decision, just like we have a private corporation in Rendell, MacVicar, that makes a personnel decision. We have a private organization that receives significant state funding, just like the private school did in Rendell, MacVicar. And we have a complaint related to a termination, just like in Rendell, MacVicar. And we believe that the conclusion for the disposition of this case can be summed up using the words of Rendell, MacVicar, where the court said here the decision to discharge the petitioners was not compelled or even influenced by any state regulation. Indeed, in contrast to the excessive regulation of the school generally, the various regulators showed relatively little interest in the school's personnel matters. I'm out of time, but I'm happy to answer any more questions that you may have. Thank you, Your Honors. We have about 36 seconds. Maybe we can change that to a minute. Wait just a moment and she'll do that. The first point to clarify is that the arguments that are being made about regulation and those are different tests. What we have to establish is a nexus such that the conduct is fairly attributable to the state. And one of those nexuses that stands on its own, according to Bloom and Rendell Baker, is whether or not they serve a public function. That's different from whether there's coercion by the state or whether there's extraordinary regulation. It's whether it serves a public function. And this Court has recognized that public education, which includes the teachers who are public school teachers, is something that's been the exclusive prerogative of the states in the past. The fact that, I mean, there's such a distinction between public schools and the school in Rendell Baker that the Court should take note of what the Court said in Rendell Baker, that until 1972, when they funded these sorts of private schools, quote, the state had not undertaken to provide education for students who could not be served by traditional public schools. A horizon is a public school. It serves a public school purpose. And when, according to one of the cases cited, Tinker versus Des Moines Independent Community School District, teachers do not shed their constitutional rights at the schoolhouse gate. The conduct that took place here was not about his employment. It was statements that were made about him by the public school through its agents about what kind of person he was. One person called him a pedophile. They said things to the Mesa School District when he was trying to look for a job to do. That has nothing to do with his employment. I mean, they could do that to anybody. It's just conduct that, because it's a public school with a flag and a Constitution and a Bill of Rights, unlike a private school, it should be held to the higher standard of the constitutional rights of fairness and justice. Did you have an option to bring this case in state court? Not with these claims. We have some state law claims, but they're not public school claims. Thank you.
judges: Trott, McKeown, Ikuta